# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

**BONNY EDWARD TAYLOR**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 2:14-CV-1163-KS-WC**

**HENRY P. HUGHES,** *et al.*                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **denies** Defendant Advanced E.M.S., Inc.'s Motion for Summary Judgment [112].

## I. BACKGROUND

This is a wrongful death and medical malpractice case arising from an apparent single-vehicle accident.[1] A state trooper at the scene of the incident reported that Taylor "lost control of the vehicle, left the roadway and collided with an embankment" which "ejected him from the truck, as there was no driver's door on the vehicle."

At 7:59 p.m., employees of Defendant Advanced E.M.S., Inc. ("AEMS") – Brooke Beam, an EMT, and Reba Reese, a paramedic – responded to the call. Taylor told Beam and Reese that he had been drinking, and that his back hurt. A Sheriff's deputy told Beam and Reese that Taylor was drunk.[2] They performed an evaluation, taking his heart rate and oxygen saturation, looking for visible injuries, and observing his respiration. But they did not perform hands-on palpitation of his abdomen, back, or

---

[1] There is a factual dispute as to whether Taylor had actually been in a wreck.

[2] There is a factual dispute as to the degree of Taylor's intoxication.

torso. They also did not use a stethoscope to listen to his heart or breathing. In fact, they did not take their equipment bag out of the ambulance.

Taylor refused further examination and would not permit them to take his blood pressure. He also refused to be transported to the hospital because he would not be able to take his hunting dogs with him. Beam and Reese tried to call Online Medical Direction to get instructions from a physician, but they had no cell service. Taylor signed an acknowledgment that he had refused transport after being informed of the risk, and Beam and Reese released him to law enforcement.

A state trooper arrested Taylor for driving under the influence and transported him to the Covington County Jail at approximately 9:33 p.m. The next morning, Taylor complained of pain, but he said he would be okay until the nurse arrived. Between 6:00 a.m. and 7:00 a.m., law enforcement called Defendant to transport Taylor to the hospital, but he died en route. Subsequent investigation revealed that Taylor had internal injuries consistent with a motor vehicle accident, including fractured ribs, a lacerated liver, and a lacerated lung.

Plaintiff is the administrator of Taylor's estate. He asserted several medical malpractice claims against Defendant AEMS. Among other things, he claims that AEMS failed to perform an adequate medical assessment, failed to inform Taylor of the risks of refusing transport to the hospital, and failed to diagnose and properly assess that Taylor had suffered traumatic injuries after being ejected from his vehicle. Defendant filed a Motion for Summary Judgment [112], which the Court now

considers.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Alexandra H. v. Oxford Health Ins. Inc.*, 833 F.3d 1299, 1306 (11th Cir. 2016). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016). "In deciding whether a material disputed fact precludes summary judgment, a court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Id.* But "conclusory allegations without specific supporting facts have no probative value. One who resists summary judgment must meet the movant's [evidence] with opposing [evidence] setting forth specific facts to show why there is an issue for trial." *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000).

## III. DISCUSSION

Plaintiff asserted claims of medical malpractice against Defendant AEMS. Under Alabama law, "any action for injury or damages or wrongful death . . . against a health care provider for breach of the standard of care" is governed by the Alabama Medical Liability Act ("AMLA"). ALA. CODE § 6-5-548(a); *see also M. C. v. Tallassee Rehab., P.C.*, 201 So. 3d 525, 533 (Ala. 2015). In such cases, the "plaintiff shall have

the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case." ALA CODE § 6-5-548(a). Defendant raised several arguments in favor of summary judgment. The Court shall address each in turn.

## A.  *Admissibility of Expert Testimony*

First, Defendant argues that Plaintiff has no admissible expert testimony to support his claims. To maintain a medical-malpractice action, the plaintiff ordinarily must present expert testimony from a 'similarly situated health-care provider' as to (1) 'the appropriate standard of care,' (2) a 'deviation from that standard [of care],' and (3) 'a proximate causal connection between the [defendant's] act or omission constituting the breach and the injury sustained by the plaintiff.'" *Lyons v. Walker Regional Med. Ctr.*, 791 So. 2d 937, 942 (Ala. 2000) (alterations original) (quoting *Pruitt v. Zeiger*, 590 So. 2d 236, 238 (Ala. 1991)); *see also Jackson v. Pleasant Grove Health Ctr.*, 980 F.2d 692, 695 (11th Cir. 1993). Defendant argues that Plaintiff's experts – Dr. Richard Sobel and Peter Gonzalez – should be barred from providing expert testimony at trial for the reasons provided in its Motions to Exclude [114, 115] their testimony.

The Court already addressed Defendant's Motions to Exclude [114, 115]. *See* Memorandum Opinion and Order at 5-6, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Aug. 18, 2017), ECF No. 170. First, the Court denied Defendant's Motion

to Exclude [114] Sobel's testimony, finding that his experience in the area of emergency medicine rendered him a "similarly situated health care provider." *Id.* Next, the Court deferred ruling on Defendant's Motion to Exclude [115] Gonzalez's testimony until trial because it had insufficient information. *Id.* at 6. Therefore, having already addressed these issues, the Court rejects Defendant's argument that Plaintiff lacks admissible expert testimony to establish the elements of her medical malpractice claim.

## B.  *Breach of Standard of Care*

Next, Defendant argues that Plaintiff does not have "substantial evidence" that it breached the applicable standard of care. "Substantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." ALA. CODE § 6-5-542(5). "The standard of care is that level of such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in like cases." ALA. CODE § 6-5-542(2). "A breach of the standard of care is the failure by a health care provider to comply with the standard of care, which failure proximately causes injury or wrongful death." *Id.* Here, the record contains substantial evidence from which a jury could conclude that Defendant breached the applicable standard of care.

Plaintiff's expert, Dr. Richard Sobel, provided an expert report in which he listed seventeen deviations from the applicable standard of care by Defendant's agents. Exhibit 39 at 9-10, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Apr. 10,

2017), ECF No. 128-32. Among other things, he believes that Defendant's agents breached the applicable standard of care by 1) failing to bring their equipment to the patient,[3] 2) failing to take a complete set of vital signs,[4] 3) failing to take a field glucose measurement,[5] 4) failing to assume and/or deduce that a motor vehicle accident had occurred,[6] 5) relying on a "cursory observational examination" of the patient,[7] 6) diagnosing the patient's injuries based on their assessment of "old" abrasions,[8] 7) failing to conduct a primary or secondary survey for injuries,[9] 8) procuring the "mark" of an intoxicated patient on a consent form for refusal of transport,[10] 9) failing to contact the on-line medical control physical entering a no-transport order,[11] 10) and failing to request law enforcement's help in contacting the on-line medical control physician or in transporting the uncooperative patient to the emergency room.[12] Dr.

---

[3] *Id.* at 4.

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at 5.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 5-6.

[11] *Id.* at 5, 7.

[12] *Id.* at 7-8.

Sobel repeated these opinions during his deposition. Exhibit 40, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Apr. 10, 2017), ECF No. 128-33.

Dr. Sobel's expert testimony constitutes substantial evidence upon which a jury could reasonably rely and conclude that Defendant's agents breached the applicable standard of care. In reply, Defendant asserts the already-rejected argument that Dr. Sobel is not a "similarly-situated healthcare provider." Defendant also cites the testimony of its own experts. Exhibit L, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Mar. 6, 2017), ECF No. 113-12; Exhibit M, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Mar. 6, 2017), ECF No. 113-13. But the Court is not permitted to weigh the evidence or make credibility determinations. *Wate v. Kubler*, 839 F.3d 1012, 1021 (11th Cir. 2016). Plaintiff presented sufficient evidence to create a genuine dispute of material fact as to this issue.

## C.    *Causation*

Next, Defendant argues that Plaintiff cannot establish a proximate causal connection between its agents' alleged breaches of the standard of care and Almus Taylor's death. First, Defendant argues that Plaintiff cannot establish causation because his expert, Dr. James Lauridson, admitted that he had no opinion as to when Almus Taylor could have been successfully treated. Defendant contends that if Taylor could have been successfully treated after its agents released him to law enforcement, the chain of proximate causation between its agents' alleged breaches of the standard of care and Taylor's death is broken. In other words, Defendant argues that the law enforcement officers' failure to seek treatment was a superseding cause of Taylor's

death.

"[T]o present a jury question" as to causation, "the plaintiff in a medical-malpractice action must adduce some evidence indicating that the alleged negligence (the breach of the appropriate standard of care) *probably* caused the injury. A mere possibility is insufficient." *Looney v. Moore*, 861 F.3d 1303, 1307 (11th Cir. 2017). But "a particular defendant's negligence need not be the sole cause of injury in order for an action to lie against that defendant . . . ." *Looney v. Davis*, 721 So. 2d 152, 158 (Ala. 1998). "Where one is guilty of negligence and this negligence concurs or coalesces with the negligence of another, and the two combine to produce an injury, each is liable for the damages, and the negligence of each is considered the proximate cause of the injury producing the damages." *Williams v. Woodman*, 424 So. 2d 611, 613 (Ala. 1982). This is a "natural extension . . . of the familiar rule that a wrongdoer is responsible for the reasonably foreseeable consequences of his tortious act, including the negligent conduct of others." *Id.* But "it is still necessary that the plaintiff prove that the defendant's negligence proximately caused the injury." *Looney*, 721 So. 2d at 158.

The record contains evidence from which a jury could reasonably conclude that Defendant's agents' alleged breaches of the standard of care probably caused Almus Taylor's death. First, Plaintiff's expert, Dr. Sobel, stated in his report:

> Had the Medics operated within reasonable standards, Mr. Taylor would have been transported to an emergency department. Then, within reasonable medical certainty, Mr. Almus Taylor's injuries would have been easily diagnosable, and duly stabilized. More likely that [sic] not and with a high degree of medical certainty, he would not have died and would have returned to a productive life.

Exhibit 39 [128-32], at 8. He also stated: "More likely than not and with reasonable medical certainty, Mr. Taylor died [sic] proximately and/or substantially contributed to by the substandard and grossly negligent care he received by Advanced E.M.S. and its agents . . . ." *Id.* at 9; *see also id.* at 11.

Additionally, Plaintiff's expert, Dr. James Lauridson, stated in his report: "Had [Almus Taylor] received medical treatment, it is my opinion, beyond reasonable medical doubt, that he would have survived these injuries." Exhibit 19 at 2, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Apr. 10, 2017), ECF No. 128-14. In his affidavit, Lauridson elaborated:

> [T]here are three factors that can be used as markers for a deteriorating medical condition and decreasing probability of survival if not given medical intervention. Those factors are blood pressure, respiration and breathing difficulty, and the development of hemorrhagic shock, with hemorrhagic shock being the most critical factor. . . . [A]s long as those three factors for the most part were not present, medical intervention, more likely than not, would have saved his life.
>
> The evidence reflects that Mr. Taylor's first medical evaluation at the accident scene . . . , indicated he had a slightly elevated pulse and respiratory rate, but had no documentation of blood pressure. He had no complaints of respiratory difficulty and was engaged in conversation. There were no signs of hemorrhagic shock.
>
> . . . It thus remains my opinion that medical intervention and treatment would have, more likely than not, been successful up until the time as three factors discussed above were present in Mr. Taylor.

Exhibit 21 at 6-7, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Apr. 10, 2017), ECF No. 128-16.

During his deposition, Lauridson testified: "Had [Almus Taylor] received medical treatment, it is my opinion beyond a reasonable medical doubt, that he would have

survived these injuries." Exhibit 20 at 40, *Taylor v. Hughes*, No. 2:14-CV-1163-KS-WC (M.D. Ala. Apr. 10, 2017), ECF No. 128-15. He said that Taylor's injuries were "not the kind of injuries that are instantaneously fatal or place you on a irreversible lethal course," *id.* at 51, and "that had he received medical treatment after his injuries, as soon as possible after his injuries, then he would have survived." *Id.* at 52.

Defendant also argues that Plaintiff can not establish causation because Lauridson provided no opinion as to the specific medical procedures that could have been done to save Taylor's life. But Defendant has not cited any Alabama law imposing so stringent a requirement on medical malpractice plaintiffs. Plaintiff has not presented "mere generalized statements that the earlier an injury or disease is treated, the better the outcome for the patient." *Hrynkiw v. Trammell*, 96 So. 3d 794, 805 (Ala. 2012). Rather, Lauridson provided detailed testimony as to nature and extent of Taylor's injuries, outlined the key factors in determining a patient's likelihood of survival, and testified that surgical intervention to fix Taylor's lacerated liver and punctured lung would have saved his life. *See* Exhibit 21 [128-16], at 5-7; Exhibit 20 [128-15], at 49-56; Exhibit 19 [128-14], at 2.

For all of these reasons, the Court finds that Plaintiff presented sufficient evidence to create a genuine dispute of material fact as to whether Defendant's agents' alleged breaches of the standard of care proximately caused Almus Taylor's death.

## IV. CONCLUSION

For these reasons, the Court **denies** Defendant Advanced E.M.S., Inc.'s Motion

for Summary Judgment [112].

SO ORDERED AND ADJUDGED this __28th__ day of __August__, 2017.


    __s/Keith Starrett_____
UNITED STATES DISTRICT JUDGE