IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BONNY EDWARD TAYLOR, as the
Personal Representative and Administrator of
the ESTATE OF ALMUS REED TAYLOR                                 PLAINTIFF

v.                                  CIVIL ACTION NO. 2:14-CV-1163-KS-WC

HENRY P. HUGHES, et al.                                                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment [108] filed by Defendants Henry Hughes, Roy Parker, Benjamin Hunter, and Bill Blue. After considering the submissions of the parties, the record, and the applicable law, the Court finds that this motion is well taken and should be granted.

**I. BACKGROUND**

Plaintiff Bonny Edward Taylor ("Plaintiff") brings this action on behalf of the Estate of Almus Taylor ("Taylor"), the decedent. She brings claims against Defendants Henry Hughes ("Hughes"), Roy Parker ("Parker"), Benjamin Hunter ("Hunter"), and Bill Blue ("Blue") (collectively "Defendants") under 42 U.S.C. § 1983 for violations of Taylor's rights to medical care under the Fourteenth Amendment, as well as state law claims of negligence and wantonness.[1]

On November 16, 2013, Taylor was found by Covington County Deputy Kyle Adams ("Adams") lying across the seat of his truck. The truck was a battered hunting truck which was missing its driver-side door[2] and was stopped in the middle of Judge Smith Road in Covington County, Alabama. Suspecting an accident, Adams called for Emergency Medical Services

---

[1] Plaintiff also brings claims against Defendant Advanced E.M.S., Inc., which are not addressed in this order.
[2] The door had been placed in the bed of the truck.

("EMS") and the Alabama State Troopers. Taylor denied having been driving to Adams because he was too intoxicated and stated that another man had been driving and that he had walked off.

The EMS team arrived on scene, followed by Alabama State Trooper Chase Amis ("Amis"). While the EMS team examined Taylor, Amis investigated the scene but found no indication that a wreck had occurred.[3] Amis did not see any visible injuries on Taylor, who told EMS that he did not want to go to the hospital. The EMS team had Taylor make a mark on a form stating that he refused transport, which was witnessed by Adams. After the EMS team left, Amis placed Taylor under arrest for DUI.

Amis transported Taylor to the Covington County Jail, where he told Parker that EMS had examined Taylor and that he had signed a release. Taylor was obviously intoxicated when he arrived at the jail and had to be assisted to the holding cell. Parker and Hunter are the only defendants who made contact with Taylor. Blue was working in the control pod that night, and Hughes, the jail administrator, was not present at the jail. According to other detainees in the holding cells that night, Taylor spent the night moaning and crying out in pain.

When Jennifer Reeves ("Reeves"), the jail's nurse, arrived at work the next morning, she was told that Taylor had been complaining of pain and that he had claimed to be in a wreck but that no one was sure that was true. After contacting Amis and learning that the driver's side door was missing from his truck, Reeves had Hunter and Parker remove Taylor from his cell and place him in a wheelchair. He slid out of the wheelchair and spit up blood. Reeves tested his O2 blood saturation level, which was only 70%, and had an officer call 911.

Taylor died en route to the hospital. An autopsy revealed he bled out due to a lacerated liver and lung.

---

[3] The wreck scene was found two days later a third of a mile away.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Eleventh Circuit has held that

> [s]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (alteration in original).

Plaintiff has conceded that the claims against Hughes are due to be dismissed. (*See* Response [123] at p. 2 n.2.) As such, the Motion for Summary Judgment [108] will be **granted** with respect to Hughes, and the claims against him will be **dismissed with prejudice**.

For the remaining claims, Defendants argue that the 42 U.S.C. § 1983 claims against them are barred by qualified immunity and that the state law claims are barred by immunity under Ala. Code § 14-6-1 and by state-agent immunity.

### B. Qualified Immunity

Qualified immunity protects government officials sued in their official capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S.

800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982)). This doctrine, where applicable, is a bar to suit altogether "rather than a mere defense to liability." *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)). The Supreme Court has explained that "the driving force behind the creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2, 107 S. Ct. 3034, 97 L.Ed.2d 23 (1987)) (internal quotations omitted and alteration in original).

There are two steps in deciding whether qualified immunity applies. *Id.* at 232. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001)) (internal citations omitted). If the plaintiff can establish this, then "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* If both steps are satisfied, qualified immunity does not apply. Because the Court finds that Plaintiff cannot satisfy the first step of the analysis, it need not reach the second.

The only constitutional right Plaintiff alleges was violated by Defendants is Taylor's right to medical care under the Fourteenth Amendment. Though as a pre-trial detainee, this right is under the Fourteenth Amendment, Plaintiff's claim is analyzed under the same standard as if it were under the Eighth Amendment. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009). To succeed on this claim, Plaintiff must show that Defendants were deliberately indifferent to Taylor's serious medical needs. *Id.* This requires that Plaintiff demonstrate "(1) a serious medical need; (2) the defendants' deliberate indifference; and (3) causation between that indifference and [Taylor's] injury." *Id.* at 1306-07 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

4

### 1. Serious Medical Need

"A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann*, 588 F.3d at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)) (internal quotations omitted). This is the objective component of Plaintiff's deliberate indifference claim. *Goebert*, 510 F.3d at 1326. While in hindsight it is obvious that Taylor's internal bleeding was a serious medical condition, because no physician diagnosed him as needing treatment, the Court must analyze the facts known to Defendants at the time in order to determine whether his medical needs were so obvious that they should have been recognized. *See Finn v. Haddock*, 459 F.App'x 833, 836 (11th Cir. 2012) (holding that the facts in deliberate indifference to serious medical needs claims under the Fourteenth Amendment must be analyzed in light of what the defendants knew when they encountered the plaintiff).

When he was brought into the jail through the sally port and escorted to his cell, Taylor was able to walk, albeit obviously impaired by intoxication.[4] (*See* Sally Port Video [128-11]; Holding Cell Video [110-45][128-10].) Amis told Parker that he was checked by EMS, and, in the booking video, makes no mention of a car accident. (*See* Booking Video [110-46].) Though Amis does not recall stating it and it is not shown on the booking video, Hunter recorded at 11:27 P.M. that night that Amis advised him that Taylor was "clear medically." (*See* Booking Report [110-23] at p. 3.) Amis further testified at his deposition that the location Taylor was found in his truck did not appear to be a wreck scene.[5] (*See* Amis Depo. [110-9] at 33:8-13.) Amis told Parker

---

[4] Though Plaintiff describes the video as "Hughes assist[ing] Taylor to the holding cell," it does not appear that the officer escorting Taylor, which is not Hughes as he was admittedly not present at the jail that night, does not appear to be providing support to Taylor so much as guidance. (*See* Memo. in Response [123] at p. 30; Holding Cell Video [110-45][128-10].)

[5] Two days after the incident, Taylor's brother and father found the scene of the accident was around a third of a mile away.

that if Taylor were "up and perky" the next day, then Parker did not have to call him if they wanted to release him. (*See* Booking Video [110-46].) Taylor told Hunter that he was "all busted up from [a] car wreck," but Hunter testified that he did not know if Taylor had actually been in a wreck at the time. (*See* Booking Medical Log [128-6]; Hunter Depo. [110-27] at 148:22-149:7.) Though Taylor had scratches on his arms, Hunter believed they were from being "in the field deer plotting all day,"[6] which could have caused him to "get scratched up that way." (Hunter Depo. [110-27] at p. 149:10-18.)

Even if Defendants were aware of the cries of pain that Michael Scott and Ethan Walker, two other detainees in the holding cells that night, testify Taylor made during the night, (*see* Scott Depo [110-31] at 11:19-23; Walker Depo [110-32] at 13:6-14), the risk of internal bleeding was not "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *See Mann*, 588 F.3d at 1307 (quoting *Hill*, 40 F.3d at 1187). The facts known to Defendants were not enough for them to conclude that a car accident had actually occurred, let alone that Taylor had been thrown from his vehicle during the accident with enough force to cause internal bleeding. With the information before them, it was not objectively unreasonable to conclude that Taylor's cries were the result of his intoxication. Therefore, the Court does not find that Plaintiff has presented enough evidence to show that Taylor's serious medical condition was objectively obvious enough for a lay person to understand his need for medical attention.

### 2. Deliberate Indifference

Even if Plaintiff were able to establish that Taylor's serious medical need was objectively discernable by Defendants, she must also show that they were deliberately indifferent to that need. To establish that Defendants were deliberately indifferent, Plaintiff must establish "(1) subjective

---

[6] This is what Taylor told EMS he had been doing earlier that day.

knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1327 (11th Cir. 2007) (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)) (alteration in original). In order to defeat summary judgment, Plaintiff must present evidence of Defendants' subjective knowledge, though circumstantial evidence can be sufficient. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). The Eleventh Circuit has held that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Id.* (citations omitted). In order to be liable for a constitutional violation, Defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [they] must also [have] draw[n] the inference." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)).

There is no evidence on the record that Defendants had enough facts to infer that Taylor could have incurred serious injuries in a car accident or that they actually made such an inference. Taylor was not found at the scene of the wreck, any impairment in moving was masked by the impairment caused by intoxication, and Defendants were told that EMS examined him on scene, which the Booking Report [110-23] suggests Defendants understood to mean that he was "clear medically." There is nothing in the record that lends itself to the conclusion that Defendants had a subjective understanding of a risk that Taylor had sustained a serious, non-obvious injury from a car crash or that they disregarded that risk through conduct that went beyond gross negligence. As such, the Court does not find that Plaintiff has adduced enough evidence to show that Defendants were deliberately indifferent to Taylor's medical needs.

Because the Court does not find that there were enough facts for Defendants to objectively determine that Taylor had a serious medical need or that they had a subjective understanding of this need and disregarded it, the Court finds no need to address Defendants' causation arguments. The Motion for Summary Judgment [108] will be **granted** with respect to Plaintiff's § 1983 claims, and they will be **dismissed with prejudice**.

C.  **State Immunity**

Section 14-6-1 of the Code of Alabama provides immunity for jailers "as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law." Furthermore, under Alabama law, state-agent immunity gives immunity from tort liability to individual state agents, such as Defendants, when performing discretionary acts, provided the state agent has not acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law" and is in compliance with federal law and "laws, rules, or regulations" of Alabama. *Hollis v. City of Brighton*, 950 So.2d 300, 307-308 (Ala. 2006). Discretionary acts are defined under Alabama law to be "those acts as to which there is no hard and fast rule as to course of conduct that one must or must not take and those requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Id.* at 307 (quoting *Norris v. City of Montgomery*, 821 So.2d 149, 153 (Ala. 1991)) (internal quotations and italics omitted).

Plaintiff contends that Defendants are not immune because they did not follow the policies and procedures of the jail and because they were in violation of Ala. Code § 14-6-19 for failure to provide necessary medical care.

1.  **Policies and Procedures**

8

The Northern District of Alabama has held that a failure to follow jail policies and procedures does not divest a jail official from immunity under § 14-6-1. *Young v. Myhrer*, --- F.Supp.3d ---, No. 2:14-CV-407-VEH, 2017 WL 1057634, at *12-15 (N.D. Ala. 2017). This Court agrees with the Northern District's analysis, finding that to hold otherwise would undermine "the broad scope of sovereign immunity" afforded to jail personnel under § 14-6-1. *Id.* at *13. If policies and procedures were held as "law" that must be complied with to gain immunity under the statute, it "would substantially eviscerate the scope of the sovereign immunity defense that the Alabama Legislature intended to provide in passing the Jailer Act," and interpreting the statute to limit "state law immunity coverage for jailers when carrying out policies and procedures incorrectly (whether intentionally or unintentionally) . . . would render it [no] more effective than a discretionary-driven defense already available under state agent immunity." *Id.* at * 15 (internal citations and quotations omitted). Therefore, this Court agrees with the Northern District of Alabama and holds that, "in absence of an underlying viable constitutional claim or the potential violation of a civil or criminal statute," sovereign immunity applies to Defendants pursuant to § 14-6-1.

2. **§ 14-6-19**

The only potential violation of a civil statute that Plaintiff alleges is violation of § 14-6-19, which states,

> Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and also necessary medicines and medical attention to those who are sick or injured, when they are unable to provide them for themselves.

Ala. Code § 14-6-19. Plaintiff relies on *Wilson v. Manning*, 880 So.2d 1101, for her contention that this is not a discretionary duty and therefore subject to state-agent immunity. The Alabama Supreme Court found in *Wilson* that a director of nursing at a jail "had no discretion to decline to

9

provide necessary medicines and treatment in violation of that statute." *Id.* at 1109. Plaintiff, however, ignores the judgment that the statute necessarily requires by the word "necessary."

Under § 14-6-19 and the ruling in *Wilson*, Defendants had no discretion to deny *necessary* medical care. However, this requires the "exercise in judgment and choice" in determining what medical treatment is necessary and involves analyzing "what is just and proper under the circumstances." *Hollis*, 950 So.2d at 307 (citations and internal quotations omitted). So while there is no discretion to provide necessary medical treatment, determining what is necessary medical treatment is a discretionary act that is entitled to immunity under state-agent immunity unless Defendants acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law" or contrary to federal law or the "laws, rules, or regulations"[7] of Alabama. *Hollis*, 950 So.2d at 307-08.

The Court has already determined that Plaintiff has not established a violation of federal law. Furthermore, there is no evidence that Defendants actions in failing to recognize the seriousness of Taylor's medical condition were done "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *See Hollis*, 950 So.2d at 307-08. Additionally, the only state law claims Plaintiff brings against Defendants are based in negligence and wantonness, which are precluded under state-agent immunity. *Id.* at 305.

Therefore, the Court finds that the state law claims against Defendants are precluded by sovereign immunity under § 14-6-1 and by state-agent immunity. The Motion for Summary Judgment [108] will be **granted** as to these claims, and they shall be **dismissed with prejudice**.

## IV. CONCLUSION

---

[7] This does not include the policies and procedures of the jail as the Court has already determined that Defendants are immune from violations of the policies and procedures under the broader immunity afforded by § 14-6-1.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment [108] is **granted**. Plaintiff's claims against Defendants Henry Hughes, Roy Parker, Benjamin Hunter, and Bill Blue are **dismissed with prejudice**.

SO ORDERED AND ADJUDGED on this the __31st____ day of August, 2017.

__s/Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE